UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 18 CR 675 |
|---|---|
| v. | Hon. Mary M. Rowland |
| CHRISTOPHER COLON | |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The United States of America, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits its sentencing memorandum as to defendant Christopher Colon. For the reasons set forth in more detail below, the government requests that the Court impose a custodial sentence of 180 months' imprisonment followed by a lifetime term of supervised release, subject to the conditions set forth in the Presentence Investigation Report ("PSR").

I.  **OFFENSE CONDUCT**[1]

In approximately December 2017, Homeland Security Investigations and the Wisconsin Department of Criminal Investigations arrested an individual named Ronald Feder for child exploitation offenses.[2] Subsequent to his arrest, law enforcement executed a search warrant at Feder's residence and seized numerous electronic devices. A digital forensic examiner extracted thousands of conversations between Feder and other users of an encrypted messaging application called Wire. Feder and these other users utilized Wire to share child pornography. Law

---

[1] Information in this section and throughout this memorandum is based on Probation's Presentence Investigation Report and Sentencing Recommendation, the Government's Version of the Offense, Defendant's Sentencing Memorandum, and materials previously produced to the defense.
[2] Ronald Feder was prosecuted in the same district under case number 17CR789.

enforcement identified one of the users who communicated with Feder as defendant Christopher COLON.

In total, a digital forensic examiner located approximately 270 messages between Feder and an individual utilizing User ID "jolubens jolubens" on Wire, later identified as COLON. As one example of their conversations, on September 22, 2017, COLON communicated with Feder through Craigslist and Wire: on Craigslist, they made arrangements to meet in person; and on Wire, Feder sent COLON approximately five images containing child pornography.[3] (The following day, Feder and COLON met at a Wal-Mart parking lot, to watch child pornography together and later discussed their actions on Craigslist.) An excerpt of their conversation on Wire is included below:

| Sender | Date & Time | Message |
|---|---|---|
| **Feder** | 09/22/2017 9:57:01 PM | **Feder sent image titled:** ***25616488-2177-4cb0-a375-950b62be2900.jpg*** |
| COLON | 09/22/2017 10:00:37 PM | Nice |
| **Feder** | 09/22/2017 10:03:34 PM | tips all wet |
| COLON | 09/22/2017 10:03:53 PM | hot. can't wait to see a tot licking it someday |
| **Feder** | 09/22/2017 10:04:05 PM | omg yes |
| COLON | 09/22/2017 10:06:07 PM | you'll get there someday |
| **Feder** | 09/22/2017 10:06:42 PM | wish you would be able to bring a toddler or 6 yo with you |
| COLON | 09/22/2017 10:08:05 PM | god me too, i'd love to watch you with one |
| **Feder** | 09/22/2017 7:00 PM | im gonna cum soon |

---

[3] This series of child pornography forms the basis of Count One of Indictment (Dkt. No. 1).

| | | |
|---|---|---|
| COLON | 09/22/2017 10:09:40 PM | im gonna cum at least 3 times tonight |

The image entitled "25616488-2177-4cb0-a375-950b62be2900.jpg" and sent by Feder to COLON on September 22, 2017, at approximately 9:57 p.m., depicts a prepubescent girl who appears to be kneeling on a couch. The prepubescent girl is visible from the top of her head down to her waist, wearing a light colored shirt with yellow trim around the neck, and holding an erect penis in her right hand. The image appears to be taken by the man whose erect penis the prepubescent girl is holding. The prepubescent girl is sticking her tongue out toward the erect penis.

The conversation between Feder and COLON on or about September 22, 2017, on Wire continued:

| **Sender** | **Date & Time** | **Message** |
|---|---|---|
| **Feder** | 09/22/2017 10:35:04 PM | **Feder sent image titled:** ***bettyvid 01_open_vayjay.avi.jpg*** |
| **Feder** | 09/22/2017 10:35:18 PM | these are too large to send |
| **Feder** | 09/22/2017 10:35:27 PM | **Feder sent image titled:** ***bettyvid 04_sistershave.avi.jpg*** |
| **Feder** | 09/22/2017 10:35:40 PM | **Feder sent image titled:** ***bettyvid 23_upskirt.avi.jpg*** |
| COLON | 09/22/2017 10:39:01 PM | thatll be you one day |

The image file entitled "bettyvid 01_open_vayjay.avi.jpg" and sent by Feder to COLON is a series of twenty, colored video stills. The video stills depict a prepubescent girl wearing a light purple top, seated on a maroon couch, and spreading her vagina and anus open with her fingers. Ten of the image stills are close ups of the prepubescent girl's vagina and four stills show her face.

The image file entitled "bettyvid 04_sistershave.avi.jpg," sent from Feder to COLON, depicts two prepubescent girls who are seated and wearing dresses but no underwear, with their vaginas exposed.

Last, the image file entitled "bettyvid 23_upskirt.avi.jpg" sent from Feder to COLON is a colored image of twenty video stills. The video stills depict a prepubescent girl wearing a dark purple colored dress laying down on a bed with blue bedding. The stills show the prepubescent girl's vagina being spread open by what appear to be an adult man's fingers. Ten of the image stills show the prepubescent girl's vagina and eight show her face. Of the ten still images of the prepubescent girl's vagina, four show an adult man's fingers manipulating the prepubescent girl's vagina, three display the prepubescent girl's vagina and three show an erect adult penis touching the prepubescent girl's vagina. As noted in the above messages between COLON and Feder, COLON acknowledged receipt of this image by telling Feder, "that'll be you one day."

In addition to learning of COLON through the prior investigation of Feder, law enforcement also observed several advertisements COLON posted soliciting adults for access to their children. For example, on June 22, 2017, an undercover agent ("UC") contacted a Craigslist poster later identified as belonging to COLON and entitled, "Into perv/taboo chat, yng, fam (Chicago)." The advertisement was associated with COLON's same IP address and stated, "Hey there, Very into taboo/perv chat. Looking to chat and possibly meet up with guys that are into similar. Into yng, fam/incest, Mb Looking to chat and share stories." The UC responded as a

fictitious father of 10 and 12-year old sons. On June 22, 2017, the following conversation took place between the UC and COLON:

| Sender | Message |
|---|---|
| UC | whats up? have you done anything with young before?? |
| COLON | Hi, yeah, I have. You? |
| UC | Nice how young have u met |
| COLON | 18+ |
| UC | Oh ok my boys are younger |
| COLON | Oh, you've never done anything with your boys? |
| UC | Nah, kinda new to this but I would need to make sure no one would hurt them |
| COLON | I completely understand. Wanna meet just you and me, chat a bit and get to know each other? If we get along we can take it from there |
| UC | send me a pic |
| COLON | ***COLON SENT AN IMAGE OF HIMSELF*** |
| UC | my boys are 12 and 10 your ok with that? |
| COLON | do you have a pic? |
| UC | Who's pic do you want ? |
| COLON | Just your pic is fine. We can just talk about regular stuff at first and if we're comfortable maybe talk more about fam, yng stuff if that's cool with you |
| COLON | Nothing came through. Wanna try emailing me directly? tiodanielm@gmail.com |

Between June 25, 2017 and June 26, 2017, the following conversation took place between the UC and COLON on tiodanielm@gmail.com:

| Sender | Message |
|---|---|
| **COLON** | Ok. We've exchanged like 50 emails back and forth now but we haven't really talked about much. If you wanna ask me anything feel free, I'm open to any questions |
| UC | Morning so what have u done with younger guys before ;-) |
| **COLON** | I've mainly done rimming, fingering and oral. How about you? |
| UC | havent really kinda new  how young |
| **COLON** | Pretty young, but the dads were there and participated as well. Do your boys get you hard? |
| UC | Oh cool sometimes lol  how young were those boys? |
| **COLON** | Very young, young enough that you could easily fit the cock and balls in your mouth at the same time. What about your boys gets u hard? |

| **COLON** | Oh, ok. So what interested you about my post then? |
|---|---|
| UC | it peeked my interest im just concerned about my sons safety I know you understand |
| **COLON** | That makes sense. So ultimately, what would you like to happen? Do you want someone to show you how to play with them? Someone to play with them while you watch? Someone to watch you play with them? |
| UC | that sounds good and how would I know you would be safe with them? |
| **COLON** | We would meet first just you and me. Once you feel comfortable with me we could do stuff with them. What's ur ideal scenario? What would you like to see us do? |
| UC | well how would my boys be safe with you? |
| **COLON** | Well hopefully you would be there with us and I would never do anything without your permission. Also I would always be careful and extremely gentle. How else can I reassure you? |
| UC | well thats good to know just that I dont want them to catch any diseases you have to see where im coming from |
| **COLON** | Of course. Also I don't expect to make them give me oral or anything anal unless you know me better. I'm playing by your rules completely. Would you like them to suck you? |

The UC and COLON continued to communicate through the tiodanielm@gmail.com address for several months until October 24, 2017. In those communications, COLON reported his work at the "observatory", referencing the John Hancock building where COLON worked as manager of operations, and offered to get the UC and his sons on the "Tilt ride" for free. Following a Google search for COLON's email address (which he previously provided to the UC), law enforcement found a TripAdvisor post titled: "Great tour of the Observatory, free for fathers and sons-Mb." The post listed COLON's email address as the contact and read: "My boy and I had an excellent private guided tour of the observatory for free. Contact Dan with Mb tours, the tour is free certain days of the week for fathers and sons."

On December 16, 2017, a different UC responded to COLON's TripAdvisor post as the fictitious father of a 10-year-old son and began communicating with COLON at the same email: tiodanielm@gmail.com. COLON advised this other UC that although the promotion had ended, COLON could still offer a free tour to the UC and his fictitious son, including access to the Tilt attraction, drinks and snacks on the 94th floor. COLON further advised the UC that a private bathroom and office were available "if you would like some special private time." Lastly, COLON suggested meeting the UC alone first, "to see if we get along and take it from there."

Lastly, in December 2017, a UC also responded to a different Craigslist Post entitled, "Into perv/taboo play,yng, fam -m4m (chicago)," which was posted from COLON's IP address. The post stated: "Hey there, Very into taboo/perv play. Looking to meet up with guys that are into similar. Always fantasized about messing around with a guy while his son or nephew is in the next room. Leave the door open so ur son or neph can peek in and see you sucking my cock." According to the poster, he was interested in children 0-12, and "prefers boys but I enjoy watching girls be used by men."

Following this investigation, law enforcement obtained a search warrant for COLON's Chicago residence in April 2018. At the time the warrant was executed, COLON had left for work and taken his electronic devices with him. COLON's roommates informed agents that COLON had multiple devices, including an iPad, Kindle and cellphone, all of which he carried with him daily in a messenger bag. When agents returned to COLON's apartment after his workday ended, they

encountered COLON walking down the street near his apartment. COLON consented to a search of his bag and phone. Agents executed the search warrant and discovered only one device—a cellphone with absolutely no data—indicating that the cell phone had been recently wiped.

## II. GUIDELINE CALCULATIONS AND APPLICABLE STATUTORY MINIMUM SENTENCE

The government has no objections to the PSR as it correctly calculates an offense level of 21 and a criminal history category of III, with an advisory Guidelines sentence of 180 months, which is the mandatory minimum term of imprisonment for Count One.

## III. THE FACTORS SET FORTH IN 18 USC § 3553(a) WARRANT A GUIDELINES SENTENCE

For the reasons outlined below, the mandatory minimum sentence of 180 months' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of COLON's offense, promote respect for the law, provide just punishment for COLON's crime, and afford adequate deterrence to similar criminal conduct.

### A. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The government recognizes certain mitigating circumstances for defendant, including growing up in poverty, watching his parents struggle with domestic violence and substance abuse, and most notably, being sexually abused for nearly four years by a family member when he was very young. Although that experience undoubtedly left the defendant scarred and in need of services, it still does not excuse his own behavior, especially after he experienced such violence himself.

In aggravation, however, it is impossible to overstate defendant's predatory nature and the danger posed by his history and characteristics. Defendant has shown an unwavering commitment to his intentions. A few months after law enforcement executed a search warrant on COLON's empty phone in 2018, COLON relocated to Portland, Oregon where he had obtained employment at Ronald McDonald House Charities—which, according to its website, provides a "home away from home" for up to 21 pediatric families of critically-ill children receiving treatment for illness or injuries at nearby hospitals. According to the Ronald McDonald House, COLON had not yet begun his employment because his background check was being completed. Nevertheless, COLON's potential job would have entailed being an on-call guest services attendant for families with sick and vulnerable children. By seeking out this job, COLON sought access to children. His decision correlates directly with his mental state, his desires, and most of all, his long-term intentions: this job would have given him a substantial amount of access to the object of his desires: children. Defendant has proved that he is willing to move across the United States to begin a new life with a clean slate at a new job that gives him direct access to and contact with children.

Furthermore, defendant demonstrated that he is moving from not just child pornography but to gaining access to minors. There can be little doubt that, were COLON communicating with an actual pedophile rather than a UC, defendant would have followed through. Following his communication and meeting with Feder, another pedophile, with the purpose of sexually bonding over child pornography,

defendant continued soliciting others with the sole purpose of accessing their children. For example, his TripAdvisor post incentivized fathers to bring their sons to COLON's work by offering them free tickets, snacks and drinks to a children's attraction in the John Hancock Observatory. In the follow up communication between defendant and UC, defendant discussed an in-person meeting with the fictitious pedophile UC, access to the UC's fictitious male sons, and his past sexual assault of children including what the defendant had allegedly performed on children: "mainly done rimming, fingering and oral […] Pretty young, but the dads were there and participated as well." (PSR 6.)

Defendant's history and predatory characteristics are also seen in an earlier "job" he sought. Specifically, before and after COLON's state conviction for a similar child pornography offense in 2015, COLON posted two fraudulent advertisements on Sittercity.com, a website for persons who seek qualified individuals for childcare. In both 2013 and 2017, COLON posed as an experienced babysitter with an early childhood development education and background, offering his babysitting services to the public. In 2013, COLON's IP address directly linked to both the post and associated email address cbcbabysitter@gmail.com; the phone number associated with the ad was also COLON's phone number. COLON posted the following:

> *Hello, I am a certified nursing assistant, I currently work part-time at a Hospital. I have several years of babysitting and childcare experience and its also something I really enjoy doing. I am the oldest of 5 kids and have been taking care of children from the time that I was very young. I started babysitting professionally, outside of my home when I was in the 9th grade and continued to babysit all through college. I am currently back in school, working part time and am available to babysit again. I have experience with children from 6 months old to teen. Because of my flexible*

> *part-time schedule, I'm available to babysit with short notice. I am on the northside of the city but I can travel or babysit from my home. I can also prepare meals and do housework. Feel free to let me know if you'd like any additional information. Thanks and have a great day!*

Four years later, in October 2017, COLON placed another ad with Sittercity. The IP address used to register the ad belonged to COLON's IP address, and COLON used his own phone number as the contact but placed the ad under the alias Christopher Orsini. Again, COLON posted the following similar advertisement:

> *My name is Christopher and I've been babysitting off and on for the past 12 years. I have a degree in early childhood education and I was a teaching assistant in pre-k through second grade for 4 years. I worked in daycare and have experience with children from 9 months old to early teens. I currently work part-time from home and can travel to you or sit at my home. I'm available at the last minute. Feel free to let me know if you have any questions. Thank you.*

Sittercity could not provide any information on whether anyone responded to the advertisements placed by COLON. Irrespective of response, the advertisements demonstrate that COLON continued to seek out access to children despite simultaneously being on probation for a child pornography charge and in therapy. Defendant is a predator with a history of commitment to his intentions whether by posing as a babysitter or by moving across the country to start a job at a children's hospital.

COLON wrote a letter to this Court, claiming to take full responsibility for his criminal conduct, but conditioned upon this Court accepting him as a by-product of his environment and victim of circumstance. Yet COLON has proven countless times that—while he certainly was a victim as a child—he is now a calculated, manipulative predator. Never once in his letter to this Court does he acknowledge himself as a

possible danger to others. His words and remorse are no more believable now than when COLON obediently gave law enforcement consent to search his phone—after erasing it—or when COLON claimed to adhere to the terms of his state probation for his child pornography offense—while committing this crime or seeking out babysitting jobs on Sittercity. Sadly, COLON has shown himself ready to say and do anything necessary to get access to children.

### B. NATURE AND SERIOUSNESS OF THE OFFENSE AND THE NEED TO PROTECT THE PUBLIC

The defendant is not a passive participant in a victimless crime; rather, defendant directly contributes to both the victimization of children and demand for further material containing child exploitation. By receiving child pornography, the defendant perpetuated the victims' abuse and helped to preserve a permanent record of it. Congress has concluded that this conduct warrants a significant prison term. Many courts have explained why. In *United States v. Goldberg*, the Seventh Circuit reversed the sentence imposed by the district court judge in a child pornography possession case. In so doing, the Seventh Circuit stated,

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

491 F.3d 668, 672 (7th Cir. 2007) (citations omitted).

In short, "the 'victimization' of the children involved does not end when the pornographer's camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). Even had the defendant simply possessed child pornography, he "perpetuate[d] the abuse initiated by the producer of materials" because the pornography creates a "permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Id. (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)); *see Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come."); *United States v. Sherman,* 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their interests in avoiding the disclosure of personal matters."). A significant period of incarceration is necessary to deter this defendant and others from committing similar crimes in the future, to promote respect for the law, and to maintain public safety. These factors support the recommended, mandatory custodial sentence of 180 months imprisonment.

Additionally, this sentence is needed for the purposes of specific deterrence. COLON has a long-running history with child pornography despite interventions by the criminal justice system. Even while on probation for a similar offense from 2015-2018 and while undergoing sex offender treatment for approximately three years, COLON was nevertheless undeterred, viewing child pornography on a weekly basis, and worse still, was seeking not just to view child pornography, but gain access to

children to abuse personally. COLON's conduct calls out for a lengthy sentence that will keep him from acting on his desires to abuse children for his sexual gratification.

## IV. THE COURT SHOULD ORDER DEFENDANT TO PAY THE $5,000 SPECIAL ASSESSMENT

Title 18, United States Code, Section 3014(a) requires that "the court shall assess an amount of $5,000 on any non-indigent person . . . convicted of an offense under . . . (2) chapter 109A (relating to sexual abuse)." The amounts collected under this section fund the Domestic Trafficking Victims' Fund. 18 U.S.C. § 3104(c)-(e). Section 3014 "does not provide any guidance regarding how a district court should evaluate indigency." *United States v. Avalos*, 743 Fed. Appx. 210, 216 (10th Cir. 2018). But "a significant number of Circuit Courts of Appeal have concluded that, for the purposes of determining indigency under Section 3014, a court must look to the defendant's current and future financial situation." *United States v. Safford*, No. 1:17-CR-54, 2019 WL 4044038, at *4 (N.D.N.Y. Aug. 15, 2019) (collecting cases).

Courts should consider the "defendant's income financial resources, earning capacity, and any burden the assessment would place on the defendant or dependents." *Id.* (citing *United States v. Lail*, 736 F. App'x. 381, 382 (4th Cir. 2018)). Similarly, the Court should consider "any specialized training, education, or skills that the defendant might have and the future employability of the defendant." *Id.* (citing *United States v. Kelley*, 861 F.3d 790, 802 (8th Cir. 2017)).

In the present case, defendant received his GED in 1998 and attended community college courses for approximately three years. PSR ¶ 111-112. *See also*, Dkt. No. 39. In the following years, defendant has enjoyed gainful employment in a

variety of positions and locations, including as a student services coordinator at Northwestern University, a secretary at Illinois Masonic Hospital, a data entry contractor with the U.S. Department of Labor, and the manager of operations at the John Hancock Tower Observatory. *Id.* ¶ 17-18. As COLON mentions in his letter to this Court: "I have been employed full time almost continuously from the age of 17. I have had jobs that I have stayed at for years, being a credit to my employers and getting promoted within short periods of time after initial employment."[4] Dkt. No. 39. Accordingly, defendant's education, linguistic abilities, employment history and his future earnings potential show that defendant is non-indigent. He has shown that he is non-indigent in his ability to retain and keep private counsel. Dkt. No. 7-8. This conclusion is consistent with other cases where defendants were less financially sound than this defendant. *See United States v. Graves*, 908 F.3d 137, 139 (5th Cir. 2018) (finding the defendant to be non-indigent where the defendant had no substantial assets and only $245 in monthly discretionary funds, but had obtained a GED, had some college, vocational skills, and had previously had earned $40,000 annually); *United States v. Shepherd*, 922 F.3d 753, 756 (6th Cir. 2019) (finding the defendant to be non-indigent where the defendant had a negative net worth, which included monthly child-support obligations, but had earned a GED, EMT certification, and was honorably discharged from the U.S. Navy); *Kelley*, 861 F.3d at 802 (finding the defendant to be non-indigent despite a negative net worth where judge noted only that the defendant was "an Eagle Scout with a college degree" who

---

[4] Def. Sent. Mem. at 21.

had the "education and skills to be employed and to earn money"). Even where court-appointed counsel has represented a defendant, courts have found that fact probative, but "not dispositive of whether the defendant is indigent under Section 3014." *Id.* (citing U*nited States v. Shepherd*, 922 F.3d 753, 758-59 (6th Cir. 2019); *Kelley*, 861 F.3d at 800; U*nited States v. Avalos*, 743 F. App'x 210, 216 (10th Cir. 2018)).

## V.   RESTITUTION AND FINE

Pursuant to 18 U.S.C. § 3663A, the defendant must pay restitution in the amount determined by the court to the victims of the offense. At this time, no victims have been identified from the series of images possessed by COLON. As such, the government requests that in lieu of restitution, the Court fine defendant $5,000 to be paid to the Federal Crime Victim Assistance Fund ("FCVAF").

## VI.   GOVERNMENT'S POSITION ON SUPERVISED RELEASE

Consistent with Probation's recommendation, the government agrees with the proposed mandatory, discretionary, and special conditions of supervised release set forth in the PSR. Additionally, the government strongly recommends that the Court impose a lifetime term of supervised release upon the completion of COLON's jail sentence.

Each decision made by this defendant is a step closer to a child. The Court is in a unique position to observe defendant's determination and escalation over the years. His behavior demonstrates the lengths and risks COLON is willing to take in pursuit of his predatory desire and aligns with the degree of danger posed to any community with children. Unfortunately, there is every reason to believe that

COLON's desires will continue to manifest into fruition if he is not given the boundaries needed to curtail his criminal behavior, including the imposition of lifetime supervised release.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose the Guideline sentence of 180 months imprisonment, followed by a lifetime term of supervised release, subject to the conditions discussed in the PSR. This sentence reflects the serious nature of the offense and the history and characteristics of the defendant, but is not greater than necessary to reflect the goals of sentencing espoused in 18 U.S.C. § 3553.

                                        Respectfully submitted,
                                        JOHN R. LAUSCH, JR.
                                        United States Attorney

By:    /s/ *Malgorzata Tracz Kozaka*
        MALGORZATA TRACZ KOZAKA
        Special Assistant United States Attorney
        219 S. Dearborn St., Suite 500
        Chicago, IL 60604
        (312) 353-5009